# Sexton v. Commonwealth.

June 19, 1942.

Vernon Faulkner and Folbert Combs for appellant.

Hubert Meredith, Attorney General, and W. Owen Keller, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER— Affirming.

Appellant was indicted with McCoy Combs and two girl companions for the murder of Robert McIntyre. Combs was tried first following his motion for severance at the September, 1941, term of the Perry circuit court, October 3rd; the jury finding him guilty inflicted the death penalty. Later at the same term appellant was called to trial, the jury failing to agree upon a verdict. On December 15, he was again tried, the jury returning a verdict of guilty inflicted the death penalty. The court overruled motion for a new trial, and on appeal the same

questions raised in the Combs case (Combs v. Commonwealth, 292 Ky. 1, 165 S. W. (2d) 832, are presented, with one exception.

Since the facts in this case are identical with those presented in the Combs case, ante, with exception later noted, it is unnecessary to make a restatement. It will be noted in the Combs case that we reviewed the alleged errors (1) the court's refusal to grant change of venue; (2) in directing a venire of jurors from another county; (3) overruling motion for continuance; (4) error in manner of selecting the jury; (5) permitting introduction of incompetent evidence, and erroneous instructions. Upon consideration of these assigned errors we concluded that the trial court had not committed prejudicial error in any respects discussed.

Counsel for appellant here insists that the motion for change of venue should have been sustained; that the court erred in ordering a jury from another county without fair effort to obtain a jury from Perry County, with the ground not common in the Combs case, that prejudicial error was committed, because notwithstanding counsel for the commonwealth and the accused had agreed on two counties from which veniremen might be summoned, the court sua sponte ordered the venire from a county other than either of those agreed upon.

The first two points were given extensive consideration on the Combs appeal, and it follows that since the facts on the whole case, and with relation to these alleged errors and the procedure, were the same, the former rulings must be adhered to. In passing we may remark that there would be all the more justifiable reason in the instant case for sending to another county for veniremen, since when appellant's case was called there had been held the Combs trial, and the mistrial of appellant.

Passing over so much of the record as manifests what occurred at the first trial of appellant (October, 1941), we find that the court on December 12, directed sixty persons qualified for jury service to be summoned from Breathitt County, and from this venire, or as many as appeared in answer to process, jurymen were selected. However, counsel challenged the entire panel on the ground, as stated in his motion supported by affidavit, that he and the commonwealth's attorney had agreed upon two other counties, from either of which a jury might be called, but the court ignored the agreement, and over

objection directed a venire from Breathitt County. Grounds of objection, insofar as the record discloses, appeared for the first time in the motion to discharge the panel, and these were based on the fact that Perry and Breathitt Counties are connected by the only main thoroughfare running through the two adjoining counties, and many citizens in Breathitt are related to those living in Perry; that one of the attorneys assisting the commonwealth's attorney in prosecution was a resident and formerly an officer in Breathitt County.

Countering appellant's motion for a new trial, particularly in reply to the claim of error, failing to send to either of the counties upon which counsel had agreed, these facts were pointed out in a written response by the commonwealth's attorney. There had been summoned from Owsley County a venire of 50 persons from which to select a jury to try both Combs and appellant. Combs was tried first, and by a jury selected from this venire, and appellant later by a jury selected from the same venire, this being the mistrial.

The court deemed it inadvisable to undertake to get another jury from Owsley. It had already appeared to the satisfaction of the court, as expressed by the court in the Combs trial, that a fair jury could not be obtained from Knott, Leslie or Letcher counties, or any one of them, because of existing conditions, and an attempt to obtain a jury from a Laurel County venire had failed. The court concluded, taking into consideration the matter of expense and resulting inconveniences, that Breathitt was a proper and logical county, and so directed the bringing of the venure.

We held in Denny v. Com., 274 Ky. 419, 118 S. W. (2d) 778, that where there had been an agreement between counsel for accused and commonwealth that a jury might be obtained from a nearby county, the accused would not, after trial, be heard to complain that the jury had been obtained from outside the county in which the indictment was returned. To the same effect is Marion v. Com., 269 Ky. 729, 108 S. W. (2d) 721; Com. v. Kelly, 266 Ky. 662, 99 S. W. (2d) 774. Counsel has cited no authority which would justify the conclusion that merely because the court, in the exercise of his discretion, did not abide by an agreement between counsel for the parties as to a particular county from which jurors might be procured, and exercising that discretion, selected a differ-

ent county, committed error, and it is doubted if any can be found so holding.

We have consistently held that we would not reverse on the charge that error had been committed in selecting a jury from an adjoining (or another) county, unless it was made to appear that the court had abused the vested discretion. One of the latest cases on the subject, and which reviews others, is Howard v. Com. 282 Ky. 663, 39 S. W. (2d) 742, strikingly applicable to the case at bar, insofar as the question of abuse of discretion is concerned. We are concluded that there is a lack of showing made which would tend to indicate an abuse of discretion. There is no claim that those of the venire selected were in any wise disqualified; there is no showing of any misconduct of the jury or a member thereof; there is no claim of bias or prejudice, nor that the verdict of the jury was contrary to or not supported by the evidence. Our Code provides that a judgment shall be reversed for any error of law appearing in the record, when upon the whole case the court is satisfied that the substantial rights of the defendant have been prejudiced thereby. Criminal Code of Practice, sec. 340. If it be assumed that error was committed by the trial court in respect of the ground under discussion, it was non-prejudicial, because it is not shown that the jury was unfair or partial, or did not afford appellant a fair and impartial trial.

In fact, all the alleged errors combined, as we view the record, if concluded to have been errors, would not lead to a belief that the defendant was not accorded a fair trial. In addition to what we have above observed, we may say that, as is usual in such cases, we have gone to the extent of examining all alleged errors set up in motion and grounds for new trial, most of which, if not all, were discussed in the Combs case, ante, and fail to find substantial error.

There is this difference in the Combs and the instant case: Appellant himself testified at some length, in an intelligent manner. His testimony was more in detail than was brought out in the testimony of the officers testifying as to confessions in this and the Combs case. His testimony detailed the circumstances attending the homicide, from the time of preparation to its culmination, in a somewhat carefree rather than penitent manner. The frank confession made with the hope perhaps that the

jury might ameliorate the penalty because of the fact that he was an immature youth and a cripple, naturally creates sympathetic appeal.

Nevertheless, we cannot, in the administration of the law, close our eyes to the established law which makes this court solely one of review, without power to reverse unless it be fairly demonstrated that error to the prejudice of substantial rights has been committed. Finding no such error, the judgment must be and is affirmed.

The whole court sitting, except Justice Ratliff, absent.